UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOURHIT DRISSI; KARIM DRISSI; SARAH DRISSI; MOURHIT DRISSI as Successor in Interest for the Estate of COLLEEN DRISSI, deceased,

    Plaintiffs,

    v.

KAISER FOUNDATION HOSPITALS, INC.; KAISER FOUNDATION HEALTH PLAN, INC.; THE PERMANENTE MEDICAL GROUP; and DOES 1-25, inclusive,

    Defendants.

No. 07-1980 SC

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

## I. **INTRODUCTION**

Plaintiffs Mourhit Drissi, Karim Drissi, and Sarah Drissi ("Plaintiffs") are the spouse and adult children of Colleen Drissi, who they allege died as a result of the inadequate care she received from defendants while awaiting a kidney transplant. Plaintiffs bring this suit on their own behalf and on behalf of the estate of Colleen Drissi, alleging causes of action for wrongful death, concealment, and conspiracy.

Defendants Kaiser Foundation Hospitals, Inc., Kaiser Foundation Health Plan, Inc. ("Health Plan"), and the Permanente Medical Group (collectively "Defendants" or "Kaiser") removed the suit from the San Francisco County Superior Court to this Court,

claiming federal question jurisdiction arising under the provisions of Part C of the Medicare Act, 42 U.S.C. § 1395w-21 et seq.

Defendants move the Court to compel Plaintiffs to submit all causes of action to binding arbitration pursuant to an arbitration agreement Mrs. Drissi purportedly signed when she enrolled in the Health Plan. Plaintiffs assert that the arbitration agreement is unenforceable because it violates California Health & Safety Code section 1363.1, which imposes certain standards on health care service plans that require binding arbitration. Defendants maintain that the California law is inapplicable because it is preempted by the Medicare Act.

This Order follows quickly on the Court's recent Order Granting Defendants' Motion to Compel Arbitration in the related case, Clay v. Permanente Medical Group, Inc., No. 06-7926. See Docket No. 15 ("Clay Order"). The facts and legal issues are largely similar, as is the Court's conclusion. The Court issues this Order separately to address minor, but relevant, factual differences.

The parties have fully briefed the issues, and counsel for both parties participated in oral argument before the Court in the Clay matter. Having considered all of the submissions and arguments, the Court hereby GRANTS Defendants' Motion to Compel Arbitration.

**II. BACKGROUND**

Colleen Drissi enrolled in the Health Plan under a group

2

agreement between Health Plan and her employer, San Juan Unified School District. Dean Decl. ¶ 2. Mrs. Drissi was a Health Plan member from the time she enrolled, in October 1990, until her death in January 2005.

Mrs. Drissi suffered kidney problems and, in 2000, she was placed on the waiting list for a kidney transplant. At that time, Defendants did not operate their own kidney transplant program, so Defendants paid for Mrs. Drissi to receive medical care through the kidney transplant program at U.C. Davis.

The Health Plan Senior Advantage is a program under which the Health Plan provides Medicare services to plan members, pursuant to an agreement with the Centers for Medicare & Medicaid Services ("CMS"). In 2003, Mrs. Drissi enrolled in the Health Plan Senior Advantage program. According to Jason Hall, Health Plan's Director of Medicare Compliance, when a Health Plan member requests information regarding the Senior Advantage program, Health Plan sends the member an enrollment kit containing the Election Form and a copy of the Evidence of Coverage ("EOC"). The Election Form Mrs. Drissi signed included a notice, in bold text surrounded by a box and highlighted with a different background color from the rest of the page, stating, "Please read the Conditions of Election and Authorization to Exchange Information on the back of this form. Sign and date below." Dean Decl. Ex. D. Beneath that box, the following text appeared:

> I understand that, except for Small Claims Court cases and claims subject to a Medicare appeals procedure, any dispute between myself, my heirs, or other associated parties on the one hand and Health Plan, its health care provides, or other associated parties on the other hand,

3

> for alleged violation of any duty arising out of or related to membership in Health plan, including any claim for medical or hospital malpractice, for premises liability, or relating to the coverage for, or delivery of services or items, irrespective of legal theory, must be decided by binding arbitration under California law and not by lawsuit or resort to court process, except as applicable law provides for judicial review of arbitration proceedings. I agree to give up my right to a jury trial and accept the use of binding arbitration. I understand that the arbitration provision is contained in the <u>Evidence of Coverage</u>.

<u>Id.</u> On the back of the Election Form the following paragraph appeared under the bold heading "Conditions of Election":

> If you are electing Kaiser Permanente Senior Advantage Coverage, be certain that you fully understand the arbitration provision, benefits, limitations, and conditions, which are described in the Kaiser Permanente Senior Advantage Group Disclosure Form and Evidence of Coverage or the Individual Membership Agreement and Disclosure Form and Evidence of Coverage. The above documents may be found in the enrollment kit, and it is available through your group benefits administrator, or made available by calling the Kaiser Permanente Member Service Call Center. . . ."

<u>Id.</u> Ex. E. The Health Plan amended the EOC annually, and sent each member a summary of the amendments, as well as the final amended EOC approved by the CMS.

In June 2004, Defendants informed Mrs. Drissi that they were opening their own kidney transplant program in San Francisco, and would therefore no longer cover the cost of her care at U.C. Davis or U.C. San Francisco. At the time, Mrs. Drissi was supposedly near the top of the waiting list for a new kidney in the U.C.S.F. program. In September 2004, Mrs. Drissi transferred to the Kaiser transplant program. A few months later, without undergoing a transplant, Mrs. Drissi died from complications arising out of her kidney problems.

4

During the second half of 2004 and beginning of 2005, when Mrs. Drissi was transferred to Kaiser's kidney transplant program, the then-current EOC contained the following provisions for binding arbitration:

> For all claims subject to this "Binding Arbitration" section, both Claimants and Respondents give up the right to a jury or court trial, and accept the use of binding arbitration. Insofar as this "Binding Arbitration" section applies to claims asserted by Kaiser Permanent Parties, it shall apply retroactively to all unresolved claims that accrued before the effective date of this EOC. Such retroactive application shall be binding only on the Kaiser Permanente Parties.
>
> Scope of Arbitration
> Any dispute shall be submitted to binding arbitration if all of the following requirements are met:
>
> 1. The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this EOC or a Member Party's Relationship to Kaiser Permanente Health Plan, Inc. (Health Plan), including any claim for medical or hospital malpractice, for premises liability, or relating to the coverage for, or delivery of, Services, irrespective of the legal theories upon which the claim is asserted.
>
> 2. The claim is asserted by one or more Member Parties against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties.

Hall Decl. Ex. C.

Plaintiffs filed this suit alleging wrongful death, concealment, and conspiracy. Defendants asked if Plaintiffs would submit the matter to binding arbitration. Plaintiffs refused, and Defendants brought this motion.

### III. **PREEMPTION ANALYSIS**

Section 2 of the Federal Arbitration Act ("FAA") provides

that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Rather than belabor the point, the Court adopts its reasoning from Clay, and holds that the FAA is applicable here. See Clay Order at 5-6.

Plaintiffs assert that the arbitration agreement violates California Health & Safety Code section 1363.1, and is therefore unenforceable. See Malek v. Blue Cross of Cal., 121 Cal. App. 4th 44, 64 (Ct. App. 2004). Defendants respond that application of section 1363.1 is preempted by the Medicare Act.

"[W]hen Congress has 'unmistakably. . . ordained,' that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall." Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977) (quoting Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963)). Here, Congress has unmistakably ordained that Medicare preempts all state regulation:

> Relation to State laws. The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3). The standards established under this statute govern the approval and distribution of marketing materials, such as the EOC. See, e.g., 42 C.F.R. §§ 422.80, 422.111. Specifically, 42 C.F.R. § 422.80(c) provides the guidelines for CMS review of Medicare Advantage marketing

6

materials. The CMS review process checks to make sure that the disclosure is printed in a proper format and text size. Id. § 422.80(c)(1). The CMS also reviews the marketing materials to determine whether they include an "[a]dequate written explanation of the grievance and appeals process, including differences between the two, and when it is appropriate to use each." Id. § 422.80(c)(1)(iii).

As California Health & Safety Code section 1363.1 purports to regulate the adequacy of disclosures regarding arbitration agreements imposed by health plans, the foregoing federal regulations preempt its application to Medicare marketing materials.[1] The Court therefore cannot apply section 1363.1 to invalidate the arbitration provision of the EOC governing the relationship between Mrs. Drissi and Defendants.

### IV. **APPLICABILITY OF THE EOC TO NON-SIGNATORY PLAINTIFFS**

Plaintiffs argue that because they did not agree to the arbitration agreement, they cannot be bound by it, even if it would have bound Mrs. Drissi. On this issue, Defendants rely on Herbert v. Superior Court of Los Angeles County, 169 Cal. App. 3d

---

[1] A more detailed analysis of preemption, including discussion of the congressional purpose in amending the Medicare preemption provision, is set forth in the Clay Order at pages 7-15. That reasoning is equally applicable here, and the Court therefore adopts it. The only difference on this issue here is that the Clay decedent had signed his enrollment form for the Health Care Senior Advantage in 2000, and the Clay plaintiffs argued that under the then-applicable standards, section 1363.1 was not preempted. As Mrs. Drissi did not enroll in the Health Plan Senior Advantage until 2003, there is no need to consider the pre-2000 version of the statute.

718 (Ct. App. 1985), and its progeny.  In Herbert, the court held that the non-signatory plaintiffs had to submit their wrongful death claims to arbitration.  Id. at 725.  Plaintiffs identify a split in the California authority, directing the Court to Rhodes v. California Hospital Medical Center, 76 Cal. App. 3d 606 (Ct. App. 1978), and subsequent decisions following it.  As in Clay, the Court finds the Herbert authority more persuasive.[2]

One factual difference between Clay and the present matter warrants discussion, however.  In Clay, the deceased and his spouse were both members of the same health plan.  Clay Order at 18-19.  This was relevant because previous California decisions suggested that the authority to secure health care for one's spouse implies the authority to require the spouse to arbitrate claims arising out of that health care.  See id. (citing Herbert, 169 Cal. App. 3d at 723; Hawkins v. Super. Ct., 89 Cal. App. 3d 413, 418-19 (Ct. App. 1979)).  Here, there is no evidence that Mr. Drissi is a member of the Health Plan, so it is less clear that Mrs. Drissi could bind Mr. Drissi to the arbitration agreement.

None of the authority cited by the parties addresses this distinction.  Plaintiffs' cases are distinguishable here for the same reasons they were in Clay.  The arbitration agreement in Rhodes lacked a provision purporting to bind the decedent's heirs to the arbitration agreement.  76 Cal. App. 3d at 608-09.  Also unlike the present case, the Rhodes plaintiffs did not include the decedent's estate.  Id. at 609.  The same distinctions apply to

---

[2] Again, a complete analysis comparing Herbert and Rhodes appears in the Clay Order, which the Court adopts here as well.

8

Baker v. Birnbaum, 202 Cal. App. 2d 288, 290-92 (Ct. App. 1988). Finally, in Buckner v. Tamarin, 98 Cal. App. 4th 140 (Ct. App. 2002), neither the decedent's estate nor the decedent's spouse was a plaintiff. Id. at 141-43.

Of the cases reviewed by the Court, Herbert is the most applicable. The Court must determine, however, if the fact that Mr. and Mrs. Drissi were not members of the same health plan is relevant. The Hawkins decision, on which Herbert relied, noted that, "[s]pouses have mutual obligations to care for and support the other . . . , including the obligation to provide medical care . . . , and they occupy a fiduciary relationship to each other." 89 Cal. App. 3d at 418-19 (internal citations omitted). The support obligations have a statutory origin. See id. (citing Cal. Civ. Code § 242 (repealed and replaced by Cal. Fam. Code § 4300)). The Hawkins court concluded that these obligations give one spouse the power to contract for medical care on behalf of the other. Id. at 419. The court recognized that in similar situations, where one party has the power to contract for medical care on another's behalf, he or she may also agree on the other's behalf to arbitrate. Id. (citing Madden v. Kaiser Found. Hosps., 17 Cal. 3d 699 (1976)(parent can bind child to arbitration when securing care for child); Doyle v. Giuliucci, 62 Cal. 2d 606 (1965)(state can bind employees to arbitration when negotiating group health care on their behalf)).

In both Herbert and Hawkins, the decedent and his or her spouse were enrolled in the same medical plan. See Herbert, 169 Cal. App. 3d at 723-24; Hawkins, 89 Cal. App. 3d at 418-19.

9

However, the decedent's authority to bind the spouse to arbitrate was based upon the authority to provide for medical care, not the actual provision of care.  That is, it appears that the fiduciary duties and obligations of spouses to provide medical care for one another are sufficient basis for binding one another to arbitration agreements.  Thus, Mrs. Drissi's agreement that her heirs would arbitrate claims arising from her membership in the Health Plan Senior Advantage binds Mr. Drissi.  Because both Mrs. Drissi's estate and Mr. Drissi are bound to arbitrate, the remaining Plaintiffs must also arbitrate their claims for wrongful death.  See Herbert, 169 Cal. App. 3d at 725-26 (describing the policy underlying the "one-action rule" for wrongful death suits).

**V.   CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' Motion to Compel Arbitration and ORDERS as follows:

1. Plaintiffs are hereby ORDERED to submit all claims to binding arbitration.
2. This action is hereby stayed pending the outcome of the arbitration, pursuant to 9 U.S.C. § 3.

IT IS SO ORDERED.

January 3, 2008

_____
UNITED STATES DISTRICT JUDGE

10